IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHRISTINE HARRINGTON, ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| ) | **AND RECOMMENDATION** |
| -versus- ) | |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | Civil Action No.: 1:06CV936 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Christine Harrington, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on December 23, 2003 (protective filing date,

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

September 3, 2003), alleging a disability onset date of August 12, 2003. Tr. 46, 202-03. The applications were denied initially and upon reconsideration. Tr. 31, 32; 206, 207. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 43. Present at the hearing, held on April 11, 2006, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 215.

By decision dated May 24, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 15. On August 25, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 7, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's back and knee pain, diabetes mellitus, carpal tunnel syndrome, and hypertension are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: lift and carry 50 pounds occasionally and 25 frequently, stand/walk six hours in an eight-hour workday and sit six hours in an eight-hour workday with occasional bending and no repetitive grasping and handling.

7. The claimant's past relevant work as a certified nurse assistant did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant's medically determinable back and knee pain, diabetes mellitus, carpal tunnel syndrome, and hypertension do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

Tr. 21.

**<u>Analysis</u>**

In her brief before the court, Plaintiff sets forth many arguments to support her position that this case should be remanded, basing them on errors in assessing residual functional capacity (RFC), past relevant work (PRW), and credibility. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

3

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404. All regulatory references will be to Title 20.

substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was fifty-six years of age. Tr. 16. The ALJ found that she has a high school equivalent education and PRW that includes employment as a certified nurse assistant ("CNA") and a mental retardation aide ("MRA"). According to the ALJ, Plaintiff initially alleged disability due to back

5

and neck pain, diabetes, high blood pressure, carpal tunnel syndrome ("CTS"), and asthma.

The ALJ decided that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. He also determined that Plaintiff met the disability insured status requirements of the Act and continued to do so through the date of his decision. Further, the ALJ found the medical evidence to establish that Plaintiff suffered from several severe impairments, but that none of these impairments, either singly or in combination, met or equaled any of the Listing of Impairments.

1. Need for Supporting Medical Opinion

Plaintiff claims that the ALJ assessed her RFC without benefit of a "supporting medical opinion." Pl.'s Br. at 4. Plaintiff first bases her argument on a Social Security Ruling (SSR) that defines RFC as: "A *medical* assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)." SSR 83-10, "Titles II and XVI: Determining Capability to Do Other Work–the Medical-Vocational Rules of Appendix 2, 1983-1991 Soc. Sec. Rep. Serv. 24, 31 (West 1992) (emphasis added).

Yet this definition has long since been replaced by one that states, "RFC is an *administrative* assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may

6

cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, "Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," 61 Fed. Reg. 34474-01, 34475 (emphasis added). A second, associated Ruling adds that RFC is not a medical issue but, rather, an administrative finding that is dispositive of a case. SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," 61 Fed. Reg. 34471-01, 34472 (citing § 404.1527(e)). Ruling 96-5p explains that the ALJ is to base the RFC on *all* of the relevant evidence in the record, including medical evidence. 61 Fed. Reg. at 34473. Thus, Plaintiff's argument has no merit.

2. Plaintiff's Abilities to Reach and Stoop

Plaintiff complains that the ALJ's RFC decision fails to mention her abilities to reach or to stoop. The record, however, fails to support Plaintiff's claim that she has difficulty with reaching. Although her medical records contain the occasional complaint of shoulder pain, see Tr. 129, 184, 185, there is no record of a corresponding shoulder impairment. Plaintiff never underwent any radiological or other study of her shoulders. And Plaintiff's consultative examination revealed no loss of range of motion of her bilateral shoulders. See Tr. 181.

"[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p, 61 Fed. Reg. at 34476. As Plaintiff has established no medically determinable impairment

7

which would impair her reaching, the ALJ was not obliged to consider such a limitation.

Ruling 85-15 explains that stooping, "(bending the body downward and forward by bending the spine at the waist)," is a form of bending. "Titles II and XVI: Capability to Do Other Work–the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," 1983-1991 Soc. Sec. Rep. Serv. 343, 350 (West 1992). See also Chester v. Callahan, 193 F.3d 10, 13 n. 1 (1st Cir. 1999) ("The ability to stoop incorporates the ability the bend."). The court finds that the ALJ's limitation of Plaintiff to "occasional bending," Tr. 20, 21, indicates that he addressed Plaintiff's ability to stoop. Cf. Bagwell v. Barnhart, 338 F. Supp. 2d 723, 734 (S.D. Tex. 2004) (finding no distinction in the regulations or rulings between the terms "bend" and "stoop").

3. Plaintiff's Use of Her Hands

The ALJ decided that Plaintiff's RFC precluded "repetitive grasping and handling." Tr. 20, 21. Plaintiff contends that using the term "repetitive" is "highly problematic." Pl.'s Br. at 6. She cites a Tenth Circuit case for the proposition that "the Commissioner endorsed a VE's statement that 'repetitive' means from 2/3 to 100% of the time, and that 'frequent' means from 1/3 to 2/3 of the time." Id. (citing Gallegos v. Barnhart, 99 Fed. Appx. 222, 225 (10th Cir. 2004)). Plaintiff adds that, in the cited case, the Commissioner contended that "'repetitive' motion is done more often than 'frequently.'" Id.

8

Plaintiff, however, has misconstrued this case. The cited passage reads:

> In identifying jobs the plaintiff could perform, the VE expressly construed the term "repetitive" to mean "from two-thirds to 100 percent of the time." Aplt. App., Vol. II at 48. *With that understanding*, the ALJ found that the plaintiff could perform jobs that require frequent reaching, handling, or fingering, even with an RFC that precludes him from performing repetitive actions with his remaining hand. Because reaching, handling, or fingering that is performed "[f]requently" is performed only " 1/3 to 2/3 of the time," the ALJ's findings are not inconsistent. Selected Characteristics of the Occupations Defined in the Revised Dictionary of Occupational Titles, App. C, Physical Demands at C-3 (1993).

Gallegos v. Barnhart, No. 03-2072, 2004 WL 1203031,*2 (10th Cir. Jun. 2, 2004) (emphasis added). Clearly, Plaintiff's proposition takes this passage way beyond its very fact-specific construction.

Plaintiff's penchant for misinterpretation is further evident in her use of Ruling 82-41 to equate "repetitive" with "rapid." She quotes: "'semiskilled jobs "may require alertness and close attention . . . coordination and dexterity . . . as when hands . . . *must be moved quickly to do repetitive tasks*."'" Pl.'s Br. at 6 (alterations in original). Ruling 82-41, entitled, "Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations," 1975-1982 Soc. Sec. Rep. Serv. 847 (West 1983), is clearly not defining here the term "repetitive," or even "repetitive tasks." Rather, at most, the Ruling suggests that the performance of repetitive tasks *may* require quick movements.

9

In fact, the cited passage is quoting from Section 404.1568(b). The full version of the regulation gives a better appreciation for just how far from a definition of "repetitive" the quoted passage is:

> *Semi-skilled jobs may require alertness and close attention* to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where *coordination and dexterity* are necessary, *as when hands* or feet *must be moved quickly to do repetitive tasks.*

§ 404.1568(b) (1982) (emphases quoted by Plaintiff). Hence, Plaintiff has provided no support for her contention that "the ALJ's finding that [Plaintiff] could not do 'repetitive' grasping and handling [Tr. 20] implied that she *could* do these things 'frequently,' up to 2/3/[sic] of the time." Pl.'s Br. at 7.

The Dictionary of Occupational Titles[4] (hereinafter, the "DOT") defines "frequently" as "[e]xists from 1/3 to 2/3 of the time." See, e.g., DOT #355.377-018. Although it does not define the term "repetitive," it is clear that the DOT does not use this term to describe "physical demand" as it does the terms occasionally, frequently, and constantly. See id. The DOT uses the term "repetitive" when describing the "temperament" of a job. The Oxford English Dictionary defines "repetition" as "the action or fact of doing something again; renewal or recurrence of an action or event;

---

[4] The Dictionary of Occupational Titles (4th ed. 1991), a Labor Department guide to job ability levels that has been approved for use in SSA cases, is the Commissioner's primary source of reliable job information. See § 404.1566(d)(1).

10

repeated use, application, or appearance."[5]  Clearly, it is possible to do something repeatedly without doing it a set fraction of the time.

3. Plaintiff's Ability to Bend

Plaintiff asserts that the ALJ's RFC finding is flawed because he failed to consider her testimony that she had "a big problem" with bending.  Tr. 233.  She contends that, since "medium" work requires "frequent" bending, she cannot perform medium work.

Plaintiff again cites Ruling 83-10, which provides:  "The considerable lifting required for the full range of medium work usually requires frequent bending-stooping.  (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.)"  1983-1991 Soc. Sec. Rep. Serv. at 30.  Yet "usually" does not mean "always"; Ruling 83-14 recognizes that "individual occupations classified as medium work vary in exertional demands from just above the light work requirements to the full range of medium work."  SSR 83-14, "Titles II and XVI:  Capability to Do Other Work–The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments," id. at 46-47.  Moreover, the ALJ specifically limited Plaintiff's RFC to only "occasional" bending.  See Tr. 20, 21.  Accordingly, the ALJ did consider

---

[5]  The court finds instructive one ALJ's description of "a non-repetitive job" as "one that involves varying tasks that use different muscles."  Brihn v. Apfel, No. 00-1193, 2000 WL 1277628, *2 (7th Cir. Sept. 7, 2000).

11

Plaintiff's bending limitation.[6] Plaintiff's ability to perform her PRW is addressed, infra.

4. Plaintiff's PRW

Plaintiff complains that the ALJ's assessment of her PRW was insufficient, citing the importance that this decision be "developed and explained fully in the disability decision," with "every effort . . . made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1975-1982 Soc. Sec. Rep. Serv. 809, 812 (West 1983)), quoted in Pl.'s Br. at 10.

The court finds that the ALJ adequately fulfilled the Ruling's requirements. He explained:

> At the hearing, the [VE] testified that the claimant's past jobs as a [CNA] and [MRA] are performed at the medium exertional level, but not most of the time. [The VE] also testified that the nurse assistant job required only occasional stooping and the [MRA] job required occasional stooping, kneeling, and crouching. The undersigned believes that based upon the claimant's [RFC], she could return to either of these jobs as generally performed in the national economy (SSR 82-61 and SSR 82-62).

Tr. 20-21. As Plaintiff concedes, the Commissioner may call upon a VE to offer relevant evidence about the demands of a claimant's PRW. § 404.1560(b)(2); see also SSR 00-4p, "Titles II and XVI: Use of Vocational Expert and Vocational

---

[6] Plaintiff again asserts, "There is no medical opinion to support this RFC," Pl.'s Br. at 9, but this objection has already been addressed, supra.

12

Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions," 65 Fed. Reg. 75759-01, 75760.

Plaintiff argues that there was insufficient evidence upon which the VE could base a decision, but Plaintiff refers only to her own testimony. Plaintiff provided numerous details about her job as an MRA in her SSA Disability Report and SSA "Work History Report." See Tr. 63, 72. Her Work History Report also contains a description of her work as a CNA. See Tr. 73. That information was supplemented by Plaintiff's testimony. See Tr. 222.

In addition, the regulations state that a VE's testimony may be used to supplement a claimant's description of his past work. § 404.1560(b)(2). And the Fourth Circuit Court of Appeals has recognized VEs as

> persons who have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs.

Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). On the whole, the ALJ had substantial evidence upon which to base his step four finding.

Plaintiff claims that the VE's testimony was insufficient because it did not address her particular job, "but merely the generic positions" of CNA and MRA. Pl.'s Br. at 10. The regulatory scheme, however, provides that the ALJ can rely either on a claimant's PRW as she performed it, or "as generally performed in the national economy." § 404.1560(b)(2). See also Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir.

1995); SSR 82-61, "Titles II and XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed," 1975-1982 Soc. Sec. Rep. Serv. 836, 838 (West 1983).  Accordingly, this objection has no merit.

5.  Plaintiff's RFC to Perform her PRW

Plaintiff asserts that, because "medium" work requires her to bend and stoop "frequently," she cannot perform her PRW which is at the medium exertional level. But as explained above, medium work does not always require frequent bending and stooping.  Further, Plaintiff mistakenly states that the DOT's description of the MRA position "does not say that only 'occasional' bending or stooping is required."  Pl.'s Br. at 11.  But the DOT's descriptions for both the MRA *and* the CNA positions specify "bending" requirements.

Ruling 85-15 explains that "[s]tooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body[.]" 1983-1991 Soc. Sec. Rep. Serv. at 350.  The MRA position requires only occasional stooping, kneeling, and crouching, and no crawling.  See DOT #355.377-018.  The CNA's specifications are for occasional stooping and *no* kneeling, crouching, or crawling. See DOT #355.674-014.  Thus, the ALJ's RFC finding is consistent with the DOT requirements for these positions.

Plaintiff complains that the VE's testimony contradicts the DOT description, but the court finds any differences to be inconsequential.  Plaintiff states that the VE "testified that the amount of stooping involved in [the CNA] job would 'probably

14

extend into the frequent range.'" Pl.'s Br. at 11 (quoting Tr. 241). During the actual exchange, the ALJ asked the VE for an estimation of how often bending was required in Plaintiff's PRW. Tr. 241. The VE answered that the CNA job:

> VE: – as classified by the DOT only has occasional stooping.
>
> ALJ: Um-hum.
>
> VE: In my experience that would *at best* be at the higher end of occasional and I think based on job analysis I've done there would be – it would *probably* extend into the frequent range[.]

Id. (emphases added). The VE's "probably" certainly does not foreclose the possibility that the CNA job, as generally performed in the national economy, requires only occasional stooping, as described by the DOT. The court finds that the ALJ's step four decision is without legal error.[7]

6. Credibility

Plaintiff argues that the ALJ's credibility assessment was flawed in its "false reasoning from true fact." Pl.'s Br. at 12. She asserts that Plaintiff's lack of surgery for her CTS[8] does not indicate that it is not disabling. But one of the factors that an adjudicator is advised to consider in the credibility assessment is what treatment the claimant has undertaken for the relief of symptoms. See SSR 96-7p, "Titles II and

---

[7] Plaintiff's claims as to the lack of medical evidence to support the RFC finding, and the absence of stooping ability in that finding, are addressed hereinabove.

[8] The ALJ added that Plaintiff "had not required any surgery on her back or knees," Tr. 19, but Plaintiff does not address this statement. On the other hand, although the ALJ did *not* mention Plaintiff's deQuervain's diagnosis (mentioned only briefly in the record, see Tr. 184), Plaintiff discusses it at length in her brief.

15

XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," 61 Fed. Reg. 34483-01, 34485 (citing § 404.1529(c)(4)). Also, "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994).

Further, to the extent Plaintiff was offered surgery, and declined, the factfinder may consider such refusal. The regulations make clear that disability benefits are unavailable to a claimant who does not follow the prescribed treatment. See § 404.1530(b). Shortly before her alleged onset of disability, Plaintiff was offered, and declined, surgery for her CTS. See Tr. 143. Moreover, the orthopaedist opined that Plaintiff was "NOT debilitated" by her CTS. Id.

Plaintiff also objects to the ALJ's notation that her treating physician refused to give her a handicap placard. But the ALJ actually referred to the doctor's statement, which read, in full: "Discussed [patient] disability – *deemed insufficient for handicap status*. [Patient] agrees." Tr. 129, cited at Tr. 19. Clearly, this statement is in the nature of a treating physician opinion, which the factfinder is obligated to consider. Cf. SSR 96-5p, 61 Fed. Reg. at 34472 ("The regulations recognize that treating sources are important sources of medical evidence and expert testimony, and that their opinions about the nature and severity of an

16

individual's impairment(s) are entitled to special significance[.]"). And, certainly, this statement undermines Plaintiff's allegations of disabling impairments.

Plaintiff next refers to the following observation by the ALJ: "[Plaintiff] told the consulting examiner that she had recently begun having minimal low back pain which increased with standing." Tr. 19. Plaintiff appears to object to the word "minimal," countering that she also "report[ed] pain that 'feels like there is a shot in her low back.'" Pl.'s Br. at 14 (quoting Tr. 178). Plaintiff proposes that the examiner's report be reviewed with caution, as it "appears to have been transcribed by someone not fully fluent in English." Id. at 13-14.

The court observes, however, that the passage, as a whole, is not at all inconsistent. It reads:

> Recently, [Plaintiff] has began [sic] to have minimal low back pain and feels like there is a shot in her low back especially when she walks down steps. She notes that standing increases the pain and that she has to prop up one of her feet in able to complete doing her dishes.

Tr. 178. Contrary to Plaintiff's interpretation, it is possible that Plaintiff can have minimal low back pain *except* when she is walking down steps, and that such minimal pain would increase with standing. Plaintiff adds that the ALJ failed to mention that she has to prop up her feet, but the adjudicator is not obliged to address every piece of evidence. See, e.g., Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Furthermore, the ALJ discussed, Tr. 19-20:

17

•Plaintiff's reliance on minimal medication, see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain);

•the range of her activities, see Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that the pattern of claimant's routine activities, including cleaning house, attending church, doing laundry, washing dishes, and visiting, was inconsistent with the plaintiff's complaints);

•Plaintiff's minimal findings at the consultative examination, see SSR 96-7p, 61 Fed. Reg. at 34487 (advising that a caregiver's "report of negative findings" may be appropriately considered "in the overall assessment of credibility").  This court is not empowered to make credibility decisions, but merely to determine if the ALJ has provided substantial evidence to support his decision, see Johnson, 434 F.3d at 658, and finds that the ALJ here has done so.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied.  Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED.  To this extent, Plaintiff's motion for summary judgment (pleading no. 10) seeking a reversal of the Commissioner's decision should be DENIED,

Defendant's motion for judgment on the pleadings (pleading no. 13) should be GRANTED, and this action should be DISMISSED with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

March 21, 2008